UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

|  | X |  |
|---|---|---|
| In re: | : | |
| | : | |
| **4921 12th AVENUE LLC** | : | Chapter 11 |
| | : | Case No.: 1-18-47256-cec |
| Debtor. | : | Judge: Hon. Carla E. Craig |
| EIN: xx-xxx1630 | : | |
| | X | |
| **4921 12th AVENUE LLC, as DEBTOR** | : | |
| | : | |
| Plaintiff, | : | |
| | : | Adv. Proc. No._____-cec |
| -against- | : | |
| | : | |
| **GALSTER FUNDING, LLC** | : | |
| | : | |
| Defendant. | X | |

## <u>ORDER TO SHOW CAUSE</u>

**TO:   THE HONORABLE CARLA E. CRAIG**
**UNITED STATES BANKRUPTCY JUDGE**

Upon the annexed application of Joseph Y. Balisok, Esq, attorney for 4921 12th AVENUE

LLC ("Debtor"), and the affirmation of Michael Levine, Debtor hereby makes this application in

support of an Order to Show Cause seeking entry of an Order of this Court, pursuant to 11 U.S.C.

§ 105(a) and F.R.B.P. § 7065, enjoining all proceedings related to the state-court action styled *Galster*

*Funding, LLC v. Yehuda Salamon, 4921 12th Avenue LLC*, et. al., commenced on November 17,

2016, under Index number 520434/2016, including the contempt hearing against Debtor's

principal, for violating the automatic stay.

**ORDERED** that Galster Funding, LLC, show cause at _____ o'clock _____ on the

dated of _____ or as soon thereafter as Debtor may be heard before the

Honorable Carla E. Craig, United States Bankruptcy Judge in Courtroom 1595 at the United States

Bankruptcy Courthouse located at 271-C Cadman Plaza East - Suite 1595, Brooklyn, NY 11201-

1800, why this Court should not enter an Order pursuant to 11 U.S.C. § 105(a) and F.R.B.P. § 7065 enjoining all proceedings related to the state-court action styled *Galster Funding, LLC v. Yehuda Salamon, 4921 12th Avenue LLC*, et. al., commenced on November 17, 2016 under Index number 520434/2016, including the contempt hearing against Debtor's principal, for violating the automatic stay.

**ORDERED** that service of this Order to Show Cause together with the application be served on or before the end of the business day on Monday, March 18, 2019, upon Galster Funding, LLC, c/o Matthew Gordon, Butler Fitzgerald Fiveson & McCarthy, 9 E 45th St, New York, NY 10017, and upon the U.S. Trustee at Office of the United States Trustee, Eastern District of NY (Brooklyn Office), U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014.

**ORDERED** that objections, if any, to the relief requested shall be made in writing, shall set forth with particularity the grounds for such objection and shall be filed with the Clerk of Court along with an extra copy marked "Chambers Copy," Trustee, United States Trustee, and the Debtor on or before _____ ; and it is further

**ORDERED** that the hearing scheduled herein may be adjourned by the Court, from time to time, without further notice other than announcement of the adjourned hearing date in open court.

Dated: Brooklyn, New York
      March 19, 2019

/s/ *Joseph Y Balisok*

Joseph Y. Balisok
BALISOK & KAUFMAN, PLLC
251 Troy Avenue
Brooklyn, NY 11213
Telephone: (718) 928-9607
Facsimile: (718) 534-9747
joseph@lawbalisok.com

TO:

| | |
|---|---|
| *U.S. Trustee* | *Galster Funding, LLC* |
| Office of the United States Trustee | c/o Matthew Gordon |
| Eastern District of NY (Brooklyn Office) | Butler Fitzgerald Fiveson & McCarthy |
| U.S. Federal Office Building | 9 E 45th St, |
| 201 Varick Street, Suite 1006 | New York, NY 10017 |
| New York, NY 10014 | (212) 615-2200 |
| (212) 510-0500 | |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | X | |
| In re: | : | |
| | : | |
| **4921 12th AVENUE LLC** | : | Chapter 11 |
| | : | Case No.: 1-18-47256-cec |
| Debtor. | : | Judge: Hon. Carla E. Craig |
| EIN: xx-xxx1630 | : | |
| | X | |
| **4921 12th AVENUE LLC, as DEBTOR** | : | |
| | : | |
| Plaintiff, | : | |
| | : | Adv. Proc. No._____-cec |
| -against- | : | |
| | : | |
| **GALSTER FUNDING, LLC** | : | |
| | : | |
| Defendant. | X | |

## <u>DEBTOR'S APPLICATION IN SUPPORT OF ORDER TO SHOW CAUSE</u>

**TO:    THE HONORABLE CARLA E. CRAIG
       UNITED STATES BANKRUPTCY JUDGE**

4921 12th Avenue LLC, the above-captioned Debtor, by its attorney Joseph Y. Balisok of

Balisok & Kaufman, PLLC, files this motion for an Order under the United States Bankruptcy

Code 11 U.S.C. § 105(a) and F.R.B.P. § 7065, enjoining all proceedings related to the state-court

action styled *Galster Funding, LLC v. Yehuda Salamon, 4921 12th Avenue LLC*, et. al.,

commenced on November 17, 2016 under Index number 520434/2016, including the contempt

hearing against Debtor's principal, for violating the automatic stay.

## <u>JURISDICTION & VENUE</u>

This Court has jurisdiction over this motion under 28 U.S.C. §§ 157 and 1334. This a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408

and 1409.

## FACTUAL BACKGROUND

Debtor respectfully refers this court to the accompanying Affirmation of Michael Levine, Esq., which fully sets forth the material facts necessary for this Court's determination.

## PRELIMINARY STATEMENT

On this motion, the court need answer only one straightforward question: whether the automatic stay should be extended to a non-debtor party where failure to extend the stay will result in a creditor exercising control over Debtor's assets and threatening this Court's jurisdiction. The answer is a resounding yes.

In this case, Galster Funding, LLC ("Galster") is trying to assert control over assets of the above-captioned Debtor through state-court litigation generally and through a contempt application in particular. Galster craftily believes that it can circumvent the stay and attack Debtor's assets by going after Debtor's Principal rather than Debtor itself. This notion, though, is flawed. Indeed, in this particular case, Debtor and its Principal are inextricably intertwined with one another. Moreover, a nominal distinction between Debtor and Debtor's Principal offers Galster no safe harbor when it comes to asserting control over assets of the Debtor and usurping the exclusive jurisdiction of this Court. For the reasons that follow, Debtor respectfully asks the Court to grant this motion in its entirety.

## LEGAL ARGUMENT

**I.    The Galster Fraud Action Against Debtor's Principal Violated the Automatic Stay Because Debtor and its Principal are Inextricably Intertwined and Prosecution Against Debtor's Principal Could Have Binding Preclusive Effects on Debtor**

Although Section 362(a) of the Code generally applies only to proceedings against a debtor, "it is well settled that bankruptcy courts may extend the automatic stay to 'enjoin suits by third-parties against third-parties if they threaten to thwart or frustrate the debtor's reorganization efforts.'" *Calpine Corp. v. Nev. Power Co.*, 354 B.R. 45, 48 (Bankr. S.D.N.Y. 2006) (citing *In re*

*Adelphia Commc'n Corp.*, 298 B.R. 49, 54 (S.D.N.Y. 2003*)); see also Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d. Cir. 1986) (upholding Bankruptcy Court's order extending stay to third parties).[1]

Moreover, extending the stay to a nominally named co-defendant in an action brought primarily against a debtor is appropriate "where there is such identity between the debtor and the [other] defendant[s] that the debtor may be said to be the real party defendant and that a judgment against the [other] defendants will in effect be a judgment or finding against the debtor." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), *cert. denied*, 479 U.S. 876 (1986); *see also Queenie Ltd. v. Nygard International*, 321 F.3d 282 (2d Cir. 2003) (same); *In re Am. Film Techs., Inc.*, 175 B.R. 847 (Bankr. D. Del. 1994) (discussed *infra*).

A primary function of the automatic stay's broad application is, *inter alia*, to avoid collateral-estoppel effects on the debtor. In *In re American Film Technologies*, the court enjoined the prosecution of a state-court wrongful discharge case as it related to a non-debtor. *Id.* There, the prepetition lawsuit, brought by a former employee of the employer-debtor, alleged that the debtor's officers and directors fraudulently induced the employee to resign before his employment contract expired. *Id.* at 848. The Court's rationale was straightforward: a fraud allegation against a corporation's principals could, if proven true, potentially impact the rights of the corporation itself. Indeed, the corporation would be liable if its principals committed fraud with apparent authority

---

[1] *See* also, *In re Residential Capital, LLC*, 563 B.R. 756, 774 (Bankr. S.D.N.Y. 2016) ["Section 105 of the Bankruptcy Code authorizes the court to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. This includes 'enjoining proceedings in other forums against non-debtors.' " (citations omitted)]; *In re Junk*, 566 B.R. 897, 914-15 (Bankr. S.D. Ohio 2017) ["under § 105(a) of the Bankruptcy Code, a bankruptcy court 'may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.' 11 U.S.C. § 105(a). It is well-settled that this section provides 'bankruptcy court[s] [the] power to enjoin suits against non-parties in state court if failure to enjoin would adversely affect [the] bankruptcy estate.' *Nicole Gas Prod.*, 518 B.R. at 443 [Bankr. S.D. Ohio 2014]"]. *In re Natl. Cent. Fin. Enterprises, Inc.*, 407 B.R. 895, 900 (Bankr. S.D. Ohio 2009) ["courts have widely affirmed that the expressly authorized exception to the Anti–Injunction Act includes injunctions authorized under the bankruptcy laws. [Section 105] includes the authority to enjoin litigants from pursuing actions pending in other courts that threaten the integrity of a bankrupt's estate …"]

to act on the corporation's behalf. *Id* at 854. The Court further explained that any factual and legal findings made "would be binding on [the debtor] under the collateral estoppel doctrine." *Id.* at 855.

In *In re Sudbury, Inc.*, 140 B.R. 461 (Bankr. N.D. Ohio 1992), the Court likewise stayed two state-court fraud actions against a Chapter 11 debtor's officers and directors. *Id.* at 464. In the court's words: "Plaintiffs' actions are based upon their prepetition transactions with the Debtor, and Debtor will be compelled to defend them because of legitimate indemnity and collateral estoppel concerns as fully as if it were a named defendant. This would entail a substantial and costly litigation effort on major prepetition claims." *Id.*

The rationale behind *American Film* and *Sudbury*, along with countless other cases, applies with equal force and effect to the instant case. Debtor has substantial interest in the Galster Fraud Action. In all, the Galster Fraud Action alleges that Debtor procured a loan through fraud. No matter how Galster characterizes its own case, the fact remains that any alleged fraud, if proven true, necessarily implicates Debtor. Galster loaned the money *to Debtor*—not its principals—so any alleged fraud was necessarily on behalf of Debtor.

Here, this Court should simply maintain the status quo by enjoining further prosecution of the contempt hearing and the entire Galster Fraud Action generally. *See* 11 U.S.C. § 105(a) (empowering this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy code); F.R.B.P. § 7065. While Section 105 is not limitless, *see Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 95–96 (2d Cir. 2010), bankruptcy courts are empowered to utilize their equitable powers under section 105 "to facilitate the implementation of other Bankruptcy Code provisions." *Id.* (quoting *Bessette v. Avco Fin. Servs. Inc.*, 230 F.3d 439, 444 (1st Cir. 2000)).

Courts have regularly used section 105 to stay third-party actions against non-debtor entities "when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003); *see also Nevada Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 409 n. 20 (S.D.N.Y. 2007) ("Courts consistently have found that section 105 may be used to stay actions against non-debtors even where section 362 otherwise would not provide such relief . . . ."); *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) ("The jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtor, to include suits . . . which may affect the amount of property in the bankrupt estate, or the allocation of property among creditors.") (internal citations and quotation marks omitted).

The decision in *Fisher*, relying on Second Circuit case law, is instructive. *See Fisher*, 155 F.3d at 878 ("[F]ollowing, by and large, the reasoning of the Second Circuit in *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988), we believe that the investors' claims . . . should be stayed pursuant to § 105...."). There, the Debtor was charged with running fraudulent scam "similar to a Ponzi scheme." *Id*. at 877–78. During the bankruptcy, several creditor-investors asserted separate fraud actions against Debtor's non-debtor accomplices; the court found that "the same limited pool of money, in the possession of the same defendants, as a result of the same acts, performed by the same individuals, [and] as part of the same conspiracy" warranted extension on the automatic stay. *Id*. at 882. After all, the court reasoned, the fraud claims might "affect the amount of property in the bankrupt estate, or the allocation of property among creditors," and were thus properly stayed. *Id*. at 882.

This case, like *Fisher*, presents a clear situation in which continued litigation on the Galster Fraud Action, especially the contempt hearing, will negatively impact assets of Debtor's estate,

justifying extension of the automatic stay. The claims alleged against Debtor's principal arise from the same wrongs alleged against Debtor. The alleged wrongs were purportedly committed by the same defendants, in connection with the same fraudulent acts. The fraud allegation against all of the defendants in the Galster Fraud Action, including the Debtor, is based on the claim that the defendants collectively committed a fraud. If Debtor's Principal committed a fraud in the name of the Debtor (which is, of course, vehemently denied), then the Debtor is automatically responsible for damages incurred by Galster. A finding that Debtor's Principal committed a fraud will unquestionably collaterally estop Debtor's ability to contend that no fraud occurred.

Moreover, this Court should enjoin further prosecution of the Galster Fraud Action, including the contempt hearing, because it threatens and interferes with this Court's exclusive jurisdiction over this matter. Under section 105, this Court has the power to "enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it." *Johns–Manville Corp. v. Colorado Ins. Guar. Assoc. (In re Johns–Manville Corp.),* 91 B.R. 225, 228 (Bankr. S.D.N.Y. 1988) (quoting *LTV Steel Co., Inc. v. Board of Ed. of the Cleveland City Sch. Dist. (In re Chateaugay Corp.),* 93 B.R. 26, 29 (S.D.N.Y. 1988)); *see also Malm v. Goldin,* No. 92–Civ–8012 (LJF), 1993 WL 330489, at *2 (S.D.N.Y. Aug. 27, 1993); *Keene Corp. v. Coleman (In re Keene Corp.),* 164 B.R. 844, 849 (Bankr. S.D.N.Y. 1994); *AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.),* 117 B.R. 789, 802 (Bankr. S.D.N.Y. 1990).

Here, this Court should exercise its broad discretionary authority and enjoin further prosecution of the entire Galster Action, including all proceedings related thereto, until the automatic stay is terminated.

## II.    Allowing Prosecution Galster Contempt Hearing Would Result in Galster Exercising Control over Property of the Bankrupt Estate

Continued prosecution of the Galster Fraud Action generally, and the contempt hearing against Debtor's Principal in particular, runs the risk of Galster asserting control over property of Debtor's estate in violation of the automatic stay. Under Section 362(a) of the Code, the filing of a petition stays not only actions against the debtor, but also actions to "exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Here, through the contempt application in particular, Galster is asking the Court to retroactively apply an expired preliminary injunction that enjoined both Debtor and its principal from transferring certain funds. There is no dispute that those funds belong to Debtor and not its principal. Simply put, the application seeks to control Debtor's use of its own property.

It is well recognized that actions against non-debtors that would have an "adverse impact" on property of the estate are subject to the automatic stay under § 362(a)(3). *See, e.g., Official Comm. of Unsecured Creditors v. PSS S.S. Co.*, 928 F.2d 565, 574 (2d Cir. 1991); *In re Adelphia Comm. Corp.* 345 B.R. 69 (Bankr. S.D.N.Y. 2007). In *Adelphia*, the Court held that the automatic stay applied to an antitrust action brought against a third party in Minnesota federal court because the Minnesota action sought to stop the debtor from selling its assets to the third party. *Id.* at 71–72. Despite the fact the Minnesota action did not name the debtor, the court looked to the substance of the transaction, as opposed to its form, and found that "[i]f action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankruptcy estate, then such action should be barred by the automatic stay." *Id.* at 76 (citing *In re 48th St. Steakhouse, Inc.*, 35 F.2d 427, 431 (2d Cir. 1987)). The court explained:

> Bankruptcy Code section 362(a)(3) protects the *in rem* jurisdiction of the Court, and prohibits interference with the disposition of the assets that are under the Court's wing – whether or not the Debtor is named as a defendant as part of the effort. And that is so without distinction as to the form the interference takes.

*Id.* at 76.

This Court has sole jurisdiction over the administration and distribution of Debtor's estate assets. *Tennessee Student Assistance Corp. v. Hood,* 541 U.S. 440, 447, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004) ("Bankruptcy courts have exclusive jurisdiction over a debtor's property, wherever located, and over the estate.") (citing 28 U.S.C. § 1334(e)); *see also* 78 U.S.C. § 78eee(b)(2)(A)(i), (4) ("Upon the filing of an application with a court for a protective decree . . . such court shall have exclusive jurisdiction of such debtor and its property wherever located . . . ."). No matter how the plaintiff in the Galster Fraud Action chooses to frame it, the entire lawsuit seeks to recover or encumber funds that are part of Debtor's estate. This will inevitably undermine this Court's jurisdiction by way of a state-court determination on how estate funds are distributed or used. *See AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.),* 117 B.R. 789, 802 (Bankr. S.D.N.Y. 1990). ("[T]he possibility of inconsistent judgments warrants the issuance of an injunction enjoining Defendants from further prosecution of the New York Actions.").

Here, regardless of whether Debtor per se is part of the contempt hearing, that hearing certainly seeks to "interfere[] with the disposition of the assets that are under [this] Court's wing." *Id.* Accordingly, the contempt hearing violated that automatic stay.

## III.    Conclusion

For the foregoing reasons, Debtor respectfully asks the Court to award the relief requested herein and any other relief the Court deems equitable and just.

Dated: Brooklyn, New York
      March 19, 2019

/s/ *Joseph Y. Balisok*

Joseph Y. Balisok
BALISOK & KAUFMAN, PLLC
251 Troy Avenue
Brooklyn, NY 11213
Telephone: (718) 928-9607
Facsimile: (718) 534-9747
Joseph@LawBalisok.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | X | |
| In re: | : | |
| | : | |
| **4921 12th AVENUE LLC** | : | Chapter 11 |
| | : | Case No.: 1-18-47256-cec |
| Debtor. | : | Judge: Hon. Carla E. Craig |
| EIN: xx-xxx1630 | : | |
| | X | |
| **4921 12th AVENUE LLC, as DEBTOR** | : | |
| | : | |
| Plaintiff, | : | |
| | : | Adv. Proc. No._____-cec |
| -against- | : | |
| | : | |
| **GALSTER FUNDING, LLC** | : | |
| | : | |
| Defendant. | X | |

## AFFIRMATION OF MICHAEL LEVINE

**MICHAEL LEVINE**, an attorney duly admitted to practice law in the within Court,

affirms the truth of the following, under the penalty of perjury:

### Background

1. I am state-court litigation counsel to the Debtor and, as such, am fully familiar with all

of the facts and circumstances as are hereinafter set forth.

2. Several suits were brought against the Debtor in the New York Supreme Court. Those

actions are: (i) *Beis Chasidic Gorlitz v. 4921 12th Avenue LLC, et. al.*, commenced on November

3, 2016 under Index number 519469/2016;[2] (ii) *Galster Funding, LLC v. Yehuda Salamon, 4921*

---

[2] That action sought (i) specific performance of a certain forbearance agreement, (ii) deeming a mortgage given to Galster Funding LLC ("Galster") a nullity and removed as of record, (iii) declaring certain satisfactions of the plaintiff's ("Gorlitz's") mortgage nullities, and (iv) an accounting. On March 28, 2018, a Judgment was entered in favor of Gorlitz nullifying the said satisfactions of mortgage, deeming Gorlitz's mortgage superior to that of Galster, and deeming the Debtor and two individuals – Yehuda Salamon and Etty Salamon – in breach of the said forbearance agreement. On April 18, 2018, the Debtor and the said individuals timely filed a Notice of Appeal form the said Judgment. The Appeal had not yet been perfected by the time the Debtor filed its bankruptcy petition in this case on December 20, 2018, which stayed the appeal.

*12th Avenue LLC, et. al.*, commenced on November 17, 2016 under Index number 520434/21016;[3]

*Galster Funding, LLC v. 4921 12th Avenue LLC, et.al.*, commenced on January 13, 2017 under

Index number 500818/2017, seeking to foreclose the Debtor's interest in certain real property;[4]

and *Beis Chasidei Gorlitz v. 4921 12th Avenue LLC, et. al.* commenced on August 30, 2018 under

Index number 517742/2018, seeking to foreclose the Debtor's interest in certain real property.[5]

### The Galster Fraud Action

3.    The events leading to the *Galster Funding, LLC v. Yehuda Salamon, 4921 12th Avenue*

*LLC, et. al.* matter (the "Galster Fraud Action") were as follows. On August 30, 2016, Galster

loaned Debtor $6.5 million and took back a mortgage on Debtor's real property. At the time of the

closing of that loan, two other mortgages on the same property existed, both in favor of Gorlitz.

Satisfactions of those other mortgages, executed by Gorlitz's principal, were given at the closing.

On November 3, 2016, Gorlitz commenced the *Beis Chasidic Gorlitz v. 4921 12th Avenue LLC,*

---

[3]  That action sought (i) a permanent injunction prohibiting the defendants and Signature Bank from dissipating the proceeds of a loan given by Galster to the Debtor, and (ii) monetary damages against the Debtor and allegedly affiliated persons and entities. On July 13,2018, Galster brought a motion, by way of order to show cause, seeking to hold Yehuda Salamon (Debtor's principal) and Etty Solomon in contempt of court for purportedly transferring funds after a preliminary injunction had been issued by the state court.  On August 29, 2018, Yehuda and Etty Solomon filed opposition papers to the same.  The state court subsequently issue an Order dismissing the motion as to Etty Solomon and directed that an evidentiary hearing take place with respect to the motion as to Yehuda Solomon.  Thereafter, the evidentiary hearing was commenced and was continuing when the Debtor filed its bankruptcy petition herein.  A request to stay the hearing pending the resolution of the instant bankruptcy case was thereafter made to the state court. On January 14, 2019, the state court denied that request, holding that "a hearing on the alleged contempt of a non-bankrupt party …is not a circumstance to deviate from the general rule and impose/extend a stay.  STAY DENIED." On February 23, 2019, Yehuda Solomon timely filed a Notice of Appeal from that determination.  The contempt hearing continued on February 19, 2019, over the objection of the Debtor and Mr. Solomon, and specific notice on the record that a contempt order would be sought before this Court against Galster and its attorneys if the same continued. On January 31, 2019, Galster brought a motion in the state court, by way of Order to Show Cause, seeking to sever the Debtor from the state court action so that it "can proceed on its claims against the non-debtor defendants." The other defendants in that case opposed the severance request on the ground that their interests were inextricably intertwined with those of the Debtor, and that a finding against them could have a prejudicial collateral estoppel effect on the Debtor.  That motion was argued on February 19, 2019, and decision on the same was reserved by the state court.

[4]  On August 20, 2018, a Judgment of Foreclosure and Sale was issued by the state court and a foreclosure sale was scheduled for December 20, 2018.  The instant bankruptcy petition was filed on December 20, 2019, prior to the sale taking place and the sale was aborted as a result.  No further proceedings have taken place in that case to date.

[5]  The Debtor and the other defendants timely answered that complaint on October 22, 2018, and no further actions took place in that case since the December 20, 2019 bankruptcy filing in the within action.

*et. al.* action (the "Gorlitz Fraud Action"), alleging that the satisfactions were fraudulent and that the same contained forged signatures. On November 17, 2016, Galster commenced the Galster Fraud Action, alleging that, *if* Gorlitz's claim was correct, then the Debtor and its principals committed a fraud against Galster.[6]

4.   The same claims were asserted against the Debtor, Yehuda Salamon, and others, and alleged, *inter alia*, that (i) the Debtor was loaned the sum of $6.5 million by Galster on August 30,2016 [¶ 10]; (ii) "*Defendants*" provided satisfactions of prior mortgages granted to Gorlitz [¶ 12]; (iii) Gorlitz commenced an action alleging that the satisfactions of its mortgages were fraudulent and sought to set them aside [¶¶ 17-10]; (iv) "[i]n the event that[Gorlitz's] allegation … are proven true, *defendants*, excepting Signature Bank, would have defrauded [Galster]" [¶ 21]; and (v) "[i]n the event that[Gorlitz's] allegation … are proven true, *defendants*, excepting Signature Bank, would have converted [Galster's] loan proceeds" [¶ 22] (emphasis added).

5.   Based on those allegations, the Complaint in the Galster Fraud Action sought, in relevant part, the following relief against *all of the defendants* collectively (excepting Signature Bank): (i) in the Second Cause of Action (labeled one for "fraud and misrepresentation"), as a result of the alleged material misrepresentations of the *defendants*, Galster "demands judgment against *defendants*, except Signature Bank, in an amount to be determined by the Court or trier of fact but in an amount not less than $6.5 million" [¶ 33]; and (ii) in the Fourth Cause of Action (labeled one for "aiding and abetting fraud"), "*Defendants* are liable to [Galster] for all losses incurred to the extent *defendants* aided and abetted the fraud" (emphasis added).[7]

---

[6]  A copy of the complaint in the Galster Fraud Action is annexed hereto and labeled Exhibit "1".

[7]  The other two Causes of Action alleged in the Complaint in the Galster Fraud Action are irrelevant to the instant motion.  The First Cause of Action sought an injunction permanently restraining the defendants from "transferring, encumbering or dissipating any and all of [Galster's] loan proceeds" [¶25].  The Third Cause of Action redundantly sought an injunction permanently restraining Signature Bank from releasing any portion of the Galster loan proceeds deposited into that bank.

6.   Simply stated, Galster alleged in the Galster Fraud Action that *all* of the defendants (except Signature Bank) had engaged in a collective fraud against Galster by allegedly submitting fraudulent satisfactions of the Gorlitz mortgage in connection with the Galster loan to the Debtor.

### The Contempt Hearing

7.   On November 18, 2016, the state court in the Galster Fraud Action issued an *ex parte* temporary restraining order enjoining defendants, pending a hearing and determination of Galster's motion for a preliminary injunction, from "disbursing, transferring, dissipating, hypothecating, encumbering or secreting any portion of the $6,095,068.80 deposited into any one of their accounts which sums represent the proceeds of [Galster]'s mortgage dated August 30, 2016."

8.   On December 16, 2016, the state court granted the preliminary injunctions requested by Galster (and by Gorlitz in the Gorlitz Fraud Action). That preliminary injunction, although contained in a single order, was filed in both in Galster Fraud Action and the Gorlitz Fraud Action and directed that "all stays and restraints previously granted by the orders dated December 2, 2016 shall remain in full force and effect."

9.   On March 5, 2017, the defendants (including the Debtor) moved to either vacate the preliminary injunction or require the posting of an undertaking as required by the CPLR, which had never been done. On June 15, 2017, the state court issued an order which was entered in the Gorlitz Fraud Action and which granted that motion and stated: "As the Preliminary injunction detailed in the December 2, 2016 order was granted, an undertaking in the amount of $250,000 is to be posted by June 21, 2017."

10.   On November 15, 2017, the defendants (including the Debtor) moved to dismiss on the ground that no undertaking had been posted, as required by the state court.  On December 21,

2017, the state court issued an Order ruling that: "[the] motion [is] granted to the extent that as the undertaking as never posted, the injunction is vacated."

11.   On July 13, 2018, Galster moved in the Galster Fraud Action seeking to hold Yehuda Salamon ("Debtor's Principal") and Etty Salamon (Yehuda Salamon's wife) in civil and criminal contempt of court for purportedly transferring funds belonging to the Debtor's estate after the preliminary injunction had been issued by the state court.  On August 29, 2018, Yehuda and Etty Solomon filed opposition papers to the same.[8]  The state court subsequently issue an Order dismissing the contempt motion as to Etty Solomon and directing that an evidentiary hearing take place with respect to the motion as to Yehuda Solomon.

12.   Thereafter, the evidentiary hearing was commenced and was continuing when the Debtor filed its bankruptcy petition herein. The defendants in the Galster Fraud Action thereafter gave notice of the bankruptcy filing to the state court and Galster's attorneys and requested a stay of the contempt hearing because a determination of the matter would necessarily have potential collateral estoppel ramifications on Debtor.

13.   Indeed, if the state court determines that a civil contempt has occurred, it would mean that the preliminary injunction always was, *and remains*, in force as to *all* the defendants in the Galster Fraud Action, including the Debtor. Consequently, the Debtor's prior participation in any transfer of funds, or the Debtor's future participation in the transfer of any funds, would *automatically* be a contemptuous act in violation of the state court's preliminary injunction. As

---

[8] While the substance of that opposition is not relevant to the instant motion, so that the Court understands the frivolous nature of the purported "contempt" motion, the following brief synopsis is presented.  Galster alleged in the motion that the Defendants (including the Debtor) purportedly violated the state court's original TRO because, on October 26, 2016 – some *three weeks before* the TRO was issued by the state court – the defendants caused one of their entities to transfer, from its Signature Bank Account, the sum of $2,500,000 to the law firm of Mintz, Levin, Cohn, Ferris, et. al.  There is absolutely no question, however, that the funds which Galster contended in the state court were transferred in violation of that court's November 18, 2018 TRO, were, in fact, transferred out of the enjoined account *three weeks before* the TRO was even issued.  At the point of that transfer – October 26, 2016 – the funds no longer belonged to any of the defendants in the Galster Fraud Action.

such, the potential collateral estoppel effects on the Debtor of a determination of the contempt motion by the state court would be monumental and potentially extremely adverse to the Debtor's estate.

14.    Notwithstanding that, on January 14, 2019, the state court denied the request to stay the contempt motion hearing in the Galster Fraud Action, holding that "a hearing on the alleged contempt of a non-bankrupt party … is not a circumstance to deviate from the general rule and impose/extend a stay.  STAY DENIED."  [*see* Exhibit 2 hereto].

15.    On February 23, 2019, Yehuda Solomon timely filed a Notice of Appeal from that determination.  Notwithstanding the pendency of the instant bankruptcy proceeding and that appeal, the contempt hearing continued on February 19, 2019, over the objection of the Debtor and Mr. Solomon, and notwithstanding specific notice by me on the record that a contempt order would be sought before this Court against Galster and its attorneys if the same continued.

21. Galster has continued to prosecute the state-court case against Debtor despite knowing that Debtor filed a Chapter 11 bankruptcy petition. Since December 20, 2018, Galster has been in violation of the automatic stay by its continued prosecution of the Galster Fraud Action seeking to assert control of Debtor's assets through a contempt application.

/s/ *Michael Levine*
Michael Levine

SUBSCRIBED and AFFIRMED to
before me this 18th day of March, 2019

/s/ *Joseph Y. Balisok*

Joseph Y. Balisok
Notary Public – State of New York
No. 02BA6225166
Qualified in Kings County
My Commission Expires July 19, 2022

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
_____ X

In re:                                            :
                                                  :
        **4921 12th AVENUE LLC**                  :        Chapter 11
                                                  :        Case No.: 1-18-47256-cec
                              Debtor.             :        Judge: Hon. Carla E. Craig
EIN: xx-xxx1630                                   :
_____ X
        **4921 12th AVENUE LLC, as DEBTOR**       :
                                                  :
                              Plaintiff,          :
                                                  :        Adv. Proc. No._____-cec
        -against-                                 :
                                                  :
**GALSTER FUNDING, LLC**                          :
                                                  :
                              Defendant.          X
_____

<u>**ORDER GRANTING DEBTOR'S MOTION**</u>

        The Court, having reviewed the movant's Motion to Reopen and for other relief, and any

related responses and objections, it is hereby:

        ORDERED that pursuant to 11 U.S.C. § 105(a) and F.R.B.P. § 7065, Debtor's Motion to

extend the automatic stay enjoining further prosecution of the state-court action styled *Galster*

*Funding, LLC v. Yehuda Salamon, 4921 12th Avenue LLC, et. al.*, is hereby GRANTED.

        ORDERED that _____

_____is hereby GRANTED.


Dated: Brooklyn, New York
        _____, 2019              /s/_____
                                          HONORABLE CARLA E. CRAIG
                                          United States Bankruptcy Judge